Jay W. Eisenhofer (Bar No. JWE5503)
Michael J. Barry
Peter B. Andrews
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY  10017
Telephone:     (646) 722-8500
Facsimile:     (646) 722-8501

*Attorneys for Berks County Employees' Retirement Fund
 and Proposed Lead Plaintiff for the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *BERKS COUNTY EMPLOYEES' RETIREMENT FUND,* Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>*FIRST AMERICAN CORPORATION, PARKER S. KENNEDY, and FRANK V. MCMAHON,*<br><br>                              Defendants. | No. 08-CIV-5654 (LAK)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF BERKS COUNTY EMPLOYEES' RETIREMENT FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF COUNSEL** |

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL HISTORY ........................................................................................................... 2

STATEMENT OF FACTS ............................................................................................................. 3

ARGUMENT .................................................................................................................................. 5

I.   The PSLRA Favors Institutional Investors Who
     Have A Large Financial Interest In The Lawsuit .................................................................. 5

     A.   BCERF Has The Largest Financial Interest Of The Plaintiffs Who Have
          Come Forward In This Class .................................................................................... 7

     B.   BCERF Satisfies The Requirements Of Rule 23 ...................................................... 7

          i.   BCERF's Claims Are Typical Of The Class's Claims ........................... 8

          ii.  BCERF Will Adequately Represent The Interests
               Of The Class ............................................................................................ 9

II.  The Court Should Approve BCERF's Choice Of Counsel ................................................. 11

CONCLUSION ............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  MDL No. 02-1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003) .............................................. 7

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ................................................................................................ 11

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................................................ 9

*Gesenhues v. Checchi*,
  No. 05-CIV-10653, 2006 WL 1169673 (S.D.N.Y. May 3, 2006) ........................................... 5

*Glauser v. EVCI Center Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ......................................................................................... 6, 7

*Hicks v. Morgan Stanley & Co.*,
  No. 01-CIV-10071, 2003 WL 21672085 (S.D.N.Y. July 16, 2003) ..................................... 8, 9

*In re Nice Systems Sec. Litig.*,
  188 F.R.D. 206 (D.N.J. 1999) .............................................................................................. 10

*In re Olsten Corp. Sec. Litig.*,
  181 F.R.D. 218 (E.D.N.Y. 1998) ............................................................................................ 6

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................................... 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................. 8

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999) .............................................................................................. 6, 10

*Skwortz v. Crayfish Co., Ltd.*,
  No. 00-6766, 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ............................................. 6, 10

*In re Universal Access Inc. Sec. Litig.*,
  209 F.R.D. 379 (E.D. Tex. 2002) ........................................................................................... 8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216 F.R.D. 248 (S.D.N.Y. 2003) ............................................................................................ 8

*The Zemel Family Trust v. Philips Int'l Realty Corp.*,
    205 F.R.D. 434 (S.D.N.Y. 2002) ................................................................................................6

## STATUTES

15 U.S.C. §78u-4(a)(3)(A)(i)(II) ....................................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(i) .........................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ......................................................................................................6

15 U.S.C. §78u-4(a)(3)(B)(iii)(cc) .................................................................................................7

15 U.S.C. §78u-4(a)(3)(B)(v) .......................................................................................................11

## OTHER AUTHORITIES

1 H. Newberg, *Newberg on Class Actions* §3.13 (4th ed. 2007) ...................................................9

Fed. R. Civ. P. 23 ................................................................................................................. passim

**PRELIMINARY STATEMENT**

Berks County Employees' Retirement Fund (hereinafter, "BCERF"), in connection with its securities fraud class action lawsuit filed against First American Corporation ("First American" or the "Company"); Parker S. Kennedy, and Frank V. McMahon, hereby moves to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  BCERF further moves for approval of its selection of the law firm of Grant & Eisenhofer P.A. to serve as Lead Counsel.

As detailed in the certification submitted herewith, between April 27, 2006 and November 6, 2007 (the "Class Period"), BCERF purchased 45,100 shares of stock in First American, suffering losses of over $47,000 in connection with its transactions.  *See* Certification Of Berks County Employees' Retirement Fund In Support Of Motion For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel ("BCERF Certification"), attached as Exhibit A to the Declaration of Michael J. Barry In Support Of Berks County Employees' Retirement Fund's Motion For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel ("Barry Decl.").  In addition to evidencing BCERF's significant stake in the outcome of this litigation, the BCERF Certification demonstrates its desire to serve as lead plaintiff in this action, as well as its understanding of the attendant duties and obligations of serving in that role.  *See id.*

BCERF a pension fund organized under the laws of Pennsylvania that is responsible for administering the retirement benefits for the public employees of Berks County, Pennsylvania. BCERF has approximately $240 million under management.   Based on the trading data detailed in the Certification of Berks County Employees' Retirement Fund In Support of Motion for

Appointment as Lead Plaintiff and for Approval of Its Selection Of Lead Counsel (Barry Decl., Ex. A), BCERF lost $47,724 as a result of purchasing First American securities at artificially inflated prices. BCERF believes that its financial interest in this action is the largest of any class member seeking appointment as lead plaintiff in this action. BCERF is not aware of any other class member that has filed an action or filed an application for appointment as lead plaintiff that suffered greater losses due to defendants' fraud. In addition, BCERF satisfies each of the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and therefore is qualified for appointment as lead plaintiff in this action. Thus, pursuant to the PSLRA's lead plaintiff provision, BCERF is presumptively the most adequate plaintiff and should be appointed Lead Plaintiff for the class.

Additionally, the Court should approve BCERF's selection of Grant & Eisenhofer P.A. as Lead Counsel. BCERF has retained counsel with substantial experience representing lead plaintiffs in securities class actions. Indeed, BCERF's selection of counsel served as Lead Counsel or Co-Lead Counsel in some of the largest securities fraud cases in history including, *inter alia*, Tyco International, Marsh & McLennan, Parmalat, Global Crossing, Pfizer, and Refco. *See* Barry Decl., at Ex. C.

## PROCEDURAL HISTORY

Plaintiff BCERF commenced this class action by filing a Complaint with this Court on June 23, 2008, on behalf of all those who purchased securities of First American. BCERF asserts claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78n(a) and 78t(a), and Rule l0b-5 promulgated thereunder, against the following defendants: First American; Parker S. Kennedy, the Chief Executive Officer and Chairman of the Board of First American, and a member of the Executive Committee; and Frank V. McMahon, the Vice

2

Chairman of the Board and Chief Financial Officer of First American, and a member of the Executive Committee. *Berks County Employees' Retirement System v. First American Corporation, et al*, S.D.N.Y. No. 08-CV-5654 (LAK) (the "Litigation"). On June 25, 2008, BCERF published notice of the commencement of its lawsuit on PRNewswire, a national business-oriented newswire service. *See* Barry Decl., Ex. B.

BCERF now files the instant Motion For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel.

## STATEMENT OF FACTS

**Background Regarding First American's Wrongdoing**

BCERF's Complaint alleges that, during the Class Period, First American and certain of the Company's officers and directors engaged in an illegal scheme with Washington Mutual, Inc. ("WaMu"), whereby the defendants, through First American's real estate subsidiary, eAppraiseIT LLC, prepared artificially inflated appraisals of homes for use in connection with mortgages issued by WaMu. During the Class Period, in quarterly earnings reports, the Company's management reported increased earnings from appraisal fees and reassured investors that internal controls were adequate. The Complaint alleges that First American's fees from the improper appraisals resulted in the Company overstating its gross profit margins and net income during the Class Period and that throughout the Class Period the defendants made false and misleading statements regarding the Company's internal controls and financial performance.

As set forth in the Complaint, First American, through eAppraiseIT, provided at least 260,000 appraisals to WaMu. At WaMu's urging eAppraiseIT provided materially false and inflated appraisals for properties where WaMu sought to originate a mortgage. Senior executives at First American were aware of and willing to accommodate the request to falsify appraisals.

3

On November 1, 2007, the New York Attorney General filed a complaint ("NYAG Complaint") alleging that beginning in "Summer 2006" WaMu put pressure on eAppraiseIT to increase the appraised value of homes:

> First American and eAppraiseIT have abdicated their role in providing "third-party, unbiased valuations" for eAppraiseIT's largest client, WaMu. Instead, eAppraiseIT improperly allows WaMu's loan production staff to hand-pick appraisers who bring in appraisal values high enough to permit WaMu's loans to close, and improperly permits WaMu to pressure eAppraiseIT appraisers to change appraisal values that are too low to permit loans to close. eAppraiseIT compromises its independence even while publicly touting that independence, and despite myriad warnings from its senior management team about the illegal collusion inherent in the compromises it is making. Instead of preserving its independence, which would have protected consumers and business customers alike, eAppraiseIT chose to protect only itself. And senior executives at First American, though warned by eAppraiseIT's senior management of its compromised independence, nonetheless directed eAppraiseIT to continue its wrongful conduct.

Throughout the Class Period, Defendants failed to disclose the undue and improper pressure placed on First American by WaMu executives in attempt to obtain higher appraisal values. As stated in the NYAG Complaint, such inflated appraisals create an enhanced risk of "loss of value in a foreclosure proceeding."

Defendants' improper appraisal practices during the Class Period (1) rendered the Company's statements about its compliance with ethical and legal guidelines materially false and misleading; (2) rendered Defendants' statements about the adequacy of the Company's internal controls materially false and misleading; (3) were not disclosed and thus constitute an ongoing omission of material fact related to the Company's core home appraisal business; (4) caused certain of the Company's reported financial information, including revenues associated with home appraisal, to be materially overstated throughout the Class Period; (5) caused the Company's loan loss reserves, provisions for doubtful account and contingent liabilities to be

4

materially understated during the Class Period; and (6) caused Defendants to report financial results that were in violation of GAAP.

## ARGUMENT

In determining which movant to appoint as lead plaintiff, the Court must consider two factors: (1) which movant has the largest financial interest in the litigation; and (2) does that movant meet the typicality and adequacy requirements of Rule 23. *See Gesenhues v. Checchi,* No. 05-CIV-10653, 2006 WL 1169673, at *2 (S.D.N.Y. May 3, 2006) ("The PSLRA . . . provides that the most adequate plaintiff has (1) 'the largest financial interest' in the relief sought by the class and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure"). Here, BCERF is the most adequate lead plaintiff; has timely filed this motion in accordance with the statutory requirements; and has the resources, expertise and the willingness to be fully involved in this litigation and to obtain the maximum possible compensation for class members. Accordingly, BCERF should be appointed as Lead Plaintiff and its selection of Lead Counsel should be approved.

**I.   THE PSLRA FAVORS INSTITUTIONAL INVESTORS WHO HAVE A LARGE FINANCIAL INTEREST IN THE LAWSUIT**

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of the notice announcing the filing of the action. 15 U.S.C. §78u-4(a)(3)(A)(i)(II); Barry Decl. at Ex. B (Notice of first filed complaint). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. §78u-4(a)(3)(B)(i). Consistent with its legislative history, the PSLRA provides that the court shall make a significant presumption when determining the "most capable" plaintiff:

5

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
> > (aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption may be overcome only by proof that the presumed lead plaintiff will not fairly and adequately represent the class or is subject to unique defenses.  *Id.*  Courts construing this provision have held that institutional investors are presumptively the most adequate lead plaintiffs.  *See, e.g.*, *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184 (S.D.N.Y. 2006) (institutional investor's presumption of being the most adequate was not rebutted by other movants); *The Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) (discussing Congressional intent while denying lead plaintiff status to non-institutional investor plaintiff); *In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-21 (E.D.N.Y. 1998) ("By establishing the presumptive criterion that the most adequate plaintiff is the one who 'has the largest financial interest in the relief sought by the class,' PSLRA §21D(a)(3)(B)(iii)(bb), Congress intended 'to increase the likelihood that institutional investors will serve as lead plaintiffs. . . .'"). (internal citation omitted).

      The PSLRA's lead plaintiff provision also serves to "ensure[ ] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers."  *In re Party City Sec. Litig.*, 189 F.R.D. 91, 104 (D.N.J. 1999); *Skwortz v. Crayfish Co., Ltd.*, No. 00-6766, 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) ("Congress believed that [the purpose behind the PSLRA] could best be achieved by encouraging institutional investors to serve as lead plaintiffs.").  As set forth herein, BCERF

6

satisfies all of the criteria contemplated by the PSLRA for determining the most adequate lead plaintiff. BCERF suffered substantial losses due to the fraud alleged in this action. As such, BCERF should be appointed as Lead Plaintiff in this action.

### A. BCERF Has The Largest Financial Interest Of The Plaintiffs Who Have Come Forward In This Case.

BCERF believes that it has a greater financial interest in this action than any other class member who has come forward, by virtue of its approximate damages of over $47,000. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 02-1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003) (appointing as lead plaintiff the institutional investor with the "largest financial stake in the litigation.").

Although the PSLRA does not mandate a particular method for calculating financial interest, "courts in this Circuit have traditionally examined the following four factors in calculating that interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (defined as the number of shares retained at the end of the class period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period." *Glauser*, 236 F.R.D. at 187 at *2 (citing *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)). Here, BCERF lost $47,724 as a result of purchasing First American's securities. Barry Decl., Ex. A. BCERF does not believe any other movant has a larger financial interest in this litigation.

### B. BCERF Satisfies The Requirements Of Rule 23.

Section 21D(a)(3)(B)(iii)(cc) of the PSLRA further provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). Rule 23(a) provides that a party may serve as a class representative so long as the following four requirements are satisfied:

7

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites of class certification under Rule 23(a), only two – typicality and adequacy of representation – directly address the characteristics of the lead plaintiff under the PSLRA which must be satisfied. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252-253 (S.D.N.Y. 2003) (citing *In re Party City*, 189 F.R.D. at 106) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.") (citations omitted). The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not enter into the Court's analysis in its determination of who should serve as lead plaintiffs. Rather, the Court should defer examination of the remaining requirements until the lead plaintiffs move for class certification. *See In re Universal Access Inc. Sec. Litig.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002) (stating that the Court should defer examination of the remaining requirements until the lead plaintiff moves for class certification). BCERF meets both applicable requirements.

### i.    BCERF's Claims Are Typical Of The Class's Claims

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties" be "typical of the claims . . . of the class." A proposed lead plaintiff's claims are typical of the claims of the class when the proposed lead plaintiff's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health Plans*, 182 F.R.D. at 50 (citations omitted); *Hicks v. Morgan Stanley & Co.*, No.

8

01-CIV-10071, 2003 WL 21672085, at *2 (S.D.N.Y. July 16, 2003) ("The typicality requirement is met when the class representative's claim 'arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'") (citations omitted). *See also* 1 H. Newberg, *Newberg on Class Actions* §3.13 (4th ed. 2007) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met regardless of minor variations in fact patterns underlying individual claims"). The Rule 23(a)(3) typicality requirement "is to ensure that 'maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Here, BCERF's claims arise from the same course of conduct from which the claims of all other class members arise. As stockholders of First American, BCERF, like other members of the class, are victims of defendants' fraudulent conduct. BCERF's losses, like the losses suffered by other members of the class, arise from the artificial inflation of First American's securities caused by the misrepresentations regarding the Company's financial performance and the wrongdoing of its' subsidiary eAppraiseIT with respect to appraisals of properties for WaMu issued mortgages. BCERF's claims are in all respects "typical" of the claims of the class.

    **ii. BCERF Will Adequately Represent The Interests Of The Class**

Rule 23(a)(4)'s requirement of adequate representation is satisfied: "if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in

9

the outcome to ensure vigorous advocacy." *Skwortz*, 2001 WL 1160745, at *6. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (citations omitted). Rule 23(a)(4)'s requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999). The adequacy of representation inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Party City Sec. Litig.*, 189 F.R.D. 91, 108 (D.N.J. 1999) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). BCERF meets the adequacy requirements.

BCERF's interests are the same as those of other class members. Like other class members, BCERF seeks to hold the defendants liable for the consequences of their violations of the federal securities laws. There are no facts which indicate any conflicts of interest between BCERF and other class members.

Further, BCERF has the resources and sophistication to fulfill the statutory role of lead plaintiff. BCERF has a staff with the legal, financial and organizational expertise to effectively oversee this proceeding and direct the actions of lead counsel. BCERF will serve the Class well, and will closely monitor the litigation and prosecute the case in the Class's best interest. *See* BCERF Certification, Barry Decl., at Ex. A. BCERF has also chosen Grant & Eisenhofer P.A. as proposed Lead Counsel for the Class, a firm that is well-versed in securities law with substantial experience serving as lead plaintiff in large, complex securities litigation in this and other district courts across the country.

**II.     THE COURT SHOULD APPROVE BCERF'S CHOICE OF COUNSEL**

Pursuant to Section 21D(a)(3)(B)(v) of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(v), BCERF selected and retained counsel, the law firm of Grant & Eisenhofer, P.A., to represent the Class, subject to the Court's approval. This Court should not disturb Lead Plaintiffs' choice of counsel unless it is necessary to protect the interests of the class. *See In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff").

Grant & Eisenhofer P.A. is among the preeminent securities class action law firms in the country and is currently serving as lead or co-lead counsel in several complex securities fraud cases involving, *inter alia*, Tyco International, Marsh & McLennan, Parmalat, Global Crossing, Pfizer, Alstom, and Refco. Grant & Eisenhofer achieved national recognition in representing institutional investors, particularly public pension funds, in federal securities fraud and related litigation. As lead counsel, the firm has recovered and collected over six billion dollars for shareholders. Grant & Eisenhofer has been lead counsel in some of the largest securities class actions in history, and in the case with the largest recovery in the long history of the Delaware Court of Chancery. *See* Grant & Eisenhofer biography attached to the Barry Decl. at Ex. C.

Accordingly, the Court should approve BCERF's selection of Grant & Eisenhofer P.A. as Lead Counsel for the Class.

## **CONCLUSION**

In light of the foregoing, BCERF respectfully requests that the Court (i) appoint BCERF to serve as Lead Plaintiff for the Class; and (ii) approve BCERF's selection of Grant and Eisenhofer P.A. to serve as Lead Counsel for the Class.

Dated: August 25, 2008                    Respectfully submitted,

   s/ Jay W. Eisenhofer
Jay W. Eisenhofer (JE-5503)
Michael J. Barry
Peter B. Andrews
GRANT & EISENHOFER P.A.
485 Lexington Avenue
29th Floor
New York, NY 10017
Tel:    (646) 722-8500
Fax:   (646) 722-8501
*Counsel for Berks County Employees'
Retirement Fund and Proposed Lead
Counsel for the Class*

12

**CERTIFICATE OF SERVICE**

  I, Jay W. Eisenhofer, hereby certify that on August 25, 2008, the foregoing Memorandum of Law in Support of Berks County Employees' Retirement fund's Motion for Appointment as Lead Plaintiff and For Approval of Its Selection of Counsel was electronically filed and served via the Court's CM/ECF Filing System to all known counsel of record.

Dated:  August 25, 2008         s/ Jay W. Eisenhofer
                 Jay W. Eisenhofer