# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *BERKS COUNTY EMPLOYEES' RETIREMENT FUND,* Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>*FIRST AMERICAN CORPORATION, PARKER S. KENNEDY, and FRANK V. MCMAHON,*<br><br>Defendants. | No. 08-CIV-5654 (LAK)<br><br>**DECLARATION OF MICHAEL J. BARRY IN SUPPORT OF BERKS COUNTY EMPLOYEES' RETIREMENT FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF COUNSEL** |

Michael J. Barry, declares and affirms under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a Director of Grant & Eisenhofer P.A., counsel for Berks County Employees' Retirement Fund (hereinafter, "BCERF") and Proposed Lead Counsel for the Class. I respectfully submit this declaration in support of Berks County's motion for appointment as lead plaintiff and for the approval of its selection of counsel.

2.      Attached hereto as Exhibit A is a true and correct copy of the Certification of Berks County Employees' Retirement Fund.

3.      Attached hereto as Exhibit B is a true and correct copy of the first notice published regarding the pendency of this action, published by PRNewswire, a national business-oriented newswire service, on June 25, 2008.

4.      Attached hereto as Exhibit C is a true and correct copy of the firm resume of Grant & Eisenhofer P.A.

Dated:  August 25, 2008

     s/ Michael J. Barry
Michael J. Barry

# EXHIBIT A

CERTIFICATION OF
BERKS COUNTY EMPLOYEES' RETIREMENT FUND
IN SUPPORT OF MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF AND FOR APPROVAL
OF ITS SELECTION OF COUNSEL

The undersigned, Christian Leinbach, makes this Certification pursuant to 28 U.S.C.

1746 and 15 U.S.C. 78u-4, and states as follows:

1.      I am the County Commissioner for Berks County, Pennsylvania, and the

Chairman of the Board of the Berks County Employees' Retirement Fund, and am authorized to

make this Certification on behalf of the Berks County Employees' Retirement Fund ("BCERF").

2.      I have reviewed the Complaint filed by BCERF against First American

Corporation ("First American") and others, and have authorized its filing.

3.      I have reviewed the records of BCERF's transactions in the securities of First

American for the class period ("Class Period"). Those transactions are listed in the chart

attached as Schedule A to this Certification.

4.      BCERF intends to actively monitor and vigorously pursue this action for the

benefit of the class, rather than simply rely on its attorneys. BCERF has retained the law firm of

Grant & Eisenhofer P.A. to represent it. This firm is knowledgeable and experienced in

securities law and litigation, particularly with regard to the role and responsibilities of

institutional investors in class actions.

5.      Like other investors who purchased First American securities during the Class

Period, BCERF believes its losses occurred as a result of the defendants' fraudulent conduct and

violations of the securities laws. BCERF believes that its claims against the defendants are

typical of those of other members of the class.

6.    BCERF did not purchase the securities that are the subject of the various complaints at the direction of counsel or to participate in any private action arising under the federal securities laws. BCERF invested in First American solely for its own business purposes.

7.    BCERF is willing to serve as the representative party on behalf of the class of First American security holders who invested during the Class Period. BCERF intends to pursue this litigation for the best interests of the class members and take whatever steps are necessary regardless of geographic location.

8.    During the three-year period preceding the date of this Certification, BCERF has not served or sought to serve as a representative party for a class in an action under the federal securities laws.

9.    BCERF will not accept any payment for serving as representative party on behalf of the class beyond its *pro rata* share of any recovery, except as ordered and approved by this Court.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 17, 2008

Honorable Christian Leinbach
Berks County Commissioner and
Chairman of the Board
Berks County Employees' Retirement Fund

A

**First American Corporation**
**Class Period: April 27, 2006 through November 6, 2007**
**Berks County Employees' Retirement Fund**

| ---------Purchases--------- | | | ---------Sales--------- | | |
|---|---|---|---|---|---|
| **Trade Date** | **Shares** | **Price** | **Trade Date** | **Shares** | **Price** |
| Open position | 15,050 | | | | |
| | | | | | |
| 10/27/06 | 50 | $41.8840 | 12/13/06 | 20,050 | $40.8517 |
| 10/30/06 | 450 | $41.4072 | 3/14/07 | 3,650 | $51.1100 |
| 10/31/06 | 300 | $40.9395 | 3/14/07 | 1,875 | $51.1500 |
| 11/1/06 | 650 | $40.7145 | 3/28/07 | 100 | $51.2727 |
| 11/2/06 | 3,500 | $38.5303 | 4/3/07 | 550 | $51.0372 |
| 11/3/06 | 2,300 | $37.9108 | 4/4/07 | 450 | $51.5156 |
| 11/6/06 | 750 | $37.8038 | 7/25/07 | 1,000 | $47.6494 |
| 11/7/06 | 750 | $37.5725 | 7/27/07 | 250 | $46.5930 |
| 11/8/06 | 1,100 | $37.5869 | 7/30/07 | 100 | $46.8229 |
| 11/9/06 | 1,150 | $37.0644 | 7/31/07 | 400 | $47.2462 |
| 11/9/06 | 50 | $37.3623 | 8/6/07 | 750 | $43.7740 |
| 11/10/06 | 1,150 | $37.1745 | 8/7/07 | 500 | $44.0776 |
| 11/13/06 | 950 | $37.4931 | 8/8/07 | 150 | $47.0000 |
| 11/14/06 | 450 | $37.2487 | 8/8/07 | 150 | $47.1159 |
| 11/14/06 | 200 | $37.1753 | 8/9/07 | 1,150 | $47.8387 |
| 11/15/06 | 50 | $37.5046 | 8/20/07 | 1,150 | $45.0400 |
| 11/21/06 | 900 | $37.7732 | 10/18/07 | 250 | $35.1451 |
| 11/21/06 | 300 | $37.7811 | 10/22/07 | 500 | $34.2784 |
| 11/22/06 | 200 | $38.1852 | 11/6/07 | 1,100 | $31.5407 |
| 11/24/06 | 50 | $38.3358 | 11/7/07 | 250 | $31.0516 * |
| 11/27/06 | 750 | $38.0398 | 11/8/07 | 850 | $30.6749 * |
| 11/28/06 | 500 | $38.0569 | 11/9/07 | 850 | $32.3975 * |
| 11/29/06 | 550 | $38.0679 | 11/12/07 | 950 | $32.0843 * |
| 11/30/06 | 700 | $38.2993 | 11/13/07 | 1,000 | $33.9881 * |
| 11/30/06 | 500 | $38.1000 | 11/14/07 | 1,000 | $34.4419 * |
| 12/1/06 | 1,000 | $38.4305 | 11/15/07 | 1,150 | $33.5753 * |
| 12/4/06 | 300 | $38.5157 | 11/16/07 | 805 | $33.2925 * |
| 12/5/06 | 350 | $39.5251 | 11/28/07 | 550 | $33.2415 * |
| 12/6/06 | 100 | $39.5907 | 11/29/07 | 850 | $33.2682 * |
| 12/13/06 | 7,400 | $40.8638 | 11/30/07 | 970 | $34.4128 * |
| 12/13/06 | 12,650 | $40.8638 | 12/3/07 | 716 | $34.1535 * |
| 12/19/06 | 50 | $40.6736 | 12/4/07 | 600 | $33.9701 * |
| 12/21/06 | 1,050 | $40.8266 | 12/5/07 | 210 | $34.8231 * |
| 12/22/06 | 550 | $40.9303 | 12/6/07 | 1,150 | $35.8190 * |
| 1/3/07 | 1,250 | $40.7422 | 12/6/07 | 400 | $35.9632 * |
| 1/4/07 | 1,100 | $40.9489 | 12/7/07 | 500 | $36.5164 * |
| 5/2/07 | 50 | $50.9750 | 12/10/07 | 900 | $37.1497 * |
| 5/3/07 | 950 | $49.6933 | 12/11/07 | 700 | $37.0615 * |
| | | | 12/12/07 | 50 | $35.4942 * |
| | | | 12/21/07 | 350 | $33.7955 * |

**First American Corporation**
**Class Period: April 27, 2006 through November 6, 2007**
**Berks County Employees' Retirement Fund**

| ----------------------Purchases---------------------- | | | | --------------------------------Sales-------------------------------- | | |
| Trade Date | Shares | Price | | Trade Date | Shares | Price |
| | | | | 12/24/07 | 500 | $35.2511 * |
| | | | | 12/26/07 | 500 | $35.1528 * |
| | | | | 12/27/07 | 650 | $34.8812 * |
| | | | | 12/28/07 | 350 | $34.2833 * |
| | | | | 12/31/07 | 450 | $34.0279 * |
| | | | | 1/2/08 | 399 | $33.7000 * |

*Shares sold within 90 days after the end of the class period are calculated at the higher value between the actual sales price and the average closing price from the end of the class period to the date of sale.*

# EXHIBIT B

Notice of Filing of Class Action Lawsuit
on Behalf of Purchasers of
First American Corporation Securities

WILMINGTON, Del., June 25, 2008 /PRNewswire/ – The following was issued today by the law firm of Grant & Eisenhofer P.A.:

This notice announces that Grant & Eisenhofer, P.A., has filed a class action lawsuit against First American Corporation ("First American" or the "Company") (NYSE:FAF) in the United States District Court for the Southern District of New York, on behalf of shareholders who purchased the common stock of the Company between April 26, 2006 and November 6, 2007, inclusive ("Class Period"), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a) and 78t(a). Named as defendants are First American, Parker S. Kennedy, the Company's Chief Executive Office and Chairman of the Board, and Fred F. McMahon, the Company's Vice Chairman and Chief Financial Officer. No class has yet been certified in this action. The case is captioned *Berks County Employees' Retirement Fund v. First American Corporation, et al.*, and is docketed at S.D.N.Y. No. 08-CIV-5654. The deadline by which to file motions for appointment as lead plaintiff in the pending lawsuits is August 25, 2008.

The Complaint alleges that, during the Class Period, First American and certain of the Company's officers and directors engaged in an illegal scheme with Washington Mutual, Inc. ("WaMu"), whereby the defendants, through First American's real estate subsidiary, eAppraiseIT LLC, prepared artificially inflated appraisals of homes for use in connection with mortgages issued by WaMu. During the Class Period, in quarterly earnings reports, the Company's management reported increased earnings from appraisal fees and reassured investors that internal controls were adequate. The Complaint alleges that First American's fees from the

improper appraisals resulted in the Company overstating its gross profit margins and net income during the Class Period and that throughout the Class Period the defendants made false and misleading statements regarding the Company's internal controls and financial performance.

Any person or entity who purchased First American securities during the Class Period may, not later than August 25, 2008, file a petition with the court seeking to serve as lead plaintiff of the proposed Class. To be a member of the proposed Class, as distinct from lead plaintiff, you need not take any action at this time. For additional information, you may contact: Michael J. Barry, Grant & Eisenhofer P.A., Chase Manhattan Centre, 1201 N. Market Street, Wilmington, Delaware 19801, telephone 302-622-7000.

**CONTACT:**  Grant & Eisenhofer, P.A.
Michael J. Barry
1201 North Market Street
Wilmington, DE 19801
Telephone: 302-622-7000
Fax: 302-622-7100
mbarry@gelaw.com

# EXHIBIT C

# GRANT & EISENHOFER P.A.

## FIRM BIOGRAPHY

Grant & Eisenhofer P.A. ("G&E") is a national litigation boutique with more than 30 attorneys that concentrates on federal securities and corporate governance litigation and other complex class actions. G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement. The firm was named to the National Law Journal's Plaintiffs' Hot List for the last three years and is listed as one of America's Leading Business Lawyers by Chambers and Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation." Based in Delaware, New York and Washington, DC, G&E routinely represents clients in federal and state courts throughout the country. G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Franklin Templeton, Trust Company of the West, The Capital Guardian Group and many other public and private domestic and foreign institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, formerly litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP. Over the years, the firm's partners have gained national reputations in securities and corporate litigation. The firm has obtained over 12 billion dollars in cases where the firm has served as lead counsel. Institutional Shareholder Services' scorecard of securities litigators consistently ranks G&E in the top 5 firms in total shareholder recoveries as well as in the top 5 firms for average shareholder recovery. G&E has been lead counsel in some of the largest securities class action recoveries in U.S. history:

> $3.2 billion settlement from Tyco International Ltd.
>
> $450 million Pan-European settlement from Royal Dutch Shell
>
> $448 million settlement from Global Crossing Ltd.
>
> $300 million recovery from Oxford Health Plans
>
> $300 million settlement from DaimlerChrysler Corporation
>
> $276 million judgment & settlement from Safety-Kleen

G&E has also achieved landmark results in corporate governance litigation:

> *Caremark / CVS Merger* - G&E represented institutional shareholders challenging the conduct of the Caremark board in connection with the merger agreement with CVS, and its rejection of a competing proposal. G&E was able to force Caremark to provide additional disclosures to public shareholders and to renegotiate the merger agreement with CVS

to provide Caremark shareholders with an additional $3.19 billion in cash consideration and statutory appraisal rights.

*Amalgamated Bank v. Tyson, et al.* – G&E represented Amalgamated Bank in a lawsuit involving the timing of stock option grants and breach of fiduciary duty at Tyson Foods. A $4.5 million cash settlement was reached in January 2008.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client will enable proxy access for shareholders to nominate director candidates, long considered the "holy grail" for investor activists.

*Unisuper Ltd. v. News Corp., et al.* – forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

*In re Digex, Inc. Shareholders Litigation* - $420 million settlement – the largest recovery in the history of the Delaware Court of Chancery.

*Teachers' Retirement System of Louisiana v. HealthSouth* – ousted holdover board members loyal to indicted CEO Richard Scrushy, and created mechanisms whereby *shareholders* would nominate their replacements.

*Carmody v. Toll Brothers* – resulted in the seminal ruling that "dead-hand" poison pills are *illegal*.

*State of Wisconsin Investment Board v. Medco Research, Inc., et al.* - forced corrective disclosures and delayed vote on merger, resulting in $48 million increase to *shareholders*.

*TRSL v. Thomas M. Siebel, et al.* – forced Siebel Systems to restructure its entire compensation system as well as cancel 26 million management stock options with a value of over $56 million.

G&E currently serves as lead counsel in the securities class actions involving, among others, Pfizer, Marsh & McLennan, Parmalat and Refco.

In addition, the firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions. They also frequently write and speak on securities and corporate governance issues. G&E partners Jay Eisenhofer and Michael Barry recently co-authored the *Shareholder Activism Handbook*. Jay Eisenhofer was named by Treasury and Risk Magazine as one of the 100 most influential people in finance.

G&E is proud of its success in 'fighting for institutional investors' in courts and other forums across the country and throughout the world.

## Grant & Eisenhofer's Attorneys

**Jay W. Eisenhofer**

Jay Eisenhofer, founder and managing partner of G&E, has been lead counsel in many of the largest securities class action recoveries in history including the $3.2 billion settlement in the Tyco case, the $450 million settlement in the Global Crossing case, and the historic $450 million pan-European settlement in the Shell case. Mr. Eisenhofer was the lead attorney in the seminal cases of *American Federation of State & County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.* where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law. Mr. Eisenhofer has been prominently featured in Law Dragon's formidable 'Law Dragon 500' list of leading litigators in America, Treasury and Risk Management magazine selected Mr. Eisenhofer as one of the 100 Most Influential People in Finance, and the National Law Journal has selected Grant & Eisenhofer as one of the top ten plaintiffs' law firms in the country for the last three years. He has served as litigation counsel to many of the largest public and private institutional investors in the world, including CalPERS, Colorado Public Employees Retirement Association, the Florida State Board of Administration, the Teachers' Retirement System of Louisiana, Ohio Public Employee Retirement Systems, Stichting Pensioenfonds ABP, and Franklin Advisers, Inc.

Mr. Eisenhofer is a graduate of the University of Pittsburgh (1978), and the Villanova University School of Law, *magna cum laude* (1986), Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom. Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming G&E in 1997.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in AFSCME Employees Pension Plan v. American International Group, Inc." *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "In re Walt Disney Co. Deriv. Litig. and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-Setters In Post-PSLRA Securities Litigation" *Practicing Law Institute*, July, 2006; "In re Cox Communications, Inc.: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*, Nov. 29, 2004; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, August 2004.

**Stuart M. Grant**

Stuart M. Grant is a founder and managing partner of Grant & Eisenhofer. His practice consists primarily of representing institutional investors nationwide in securities and corporate governance litigation, proxy contests, and other related matters. Mr. Grant has successfully argued on behalf of institutional investors in many groundbreaking cases including: *Gluck v. CellStar* (in which State of Wisconsin Investment Board was the first institution named as lead plaintiff pursuant to the PSLRA over the objection of first filed plaintiffs), and *In re Digex Stockholders Litigation* (in which lead plaintiff provisions were established in Delaware, and in which plaintiffs achieved the largest settlement in Delaware Chancery Court history), and *In re UniSuper Ltd., et al. v. News Corporation, et al.* (a landmark case in which the Delaware Chancery Court ruled that shareholders may limit board authority without amending the corporation's charter). Most recently, Mr. Grant was lead trial counsel in the six-week securities class action trial of *In re Safety-Kleen Corp. Bondholders Litigation*, which resulted in judgments holding the company's CEO and CFO jointly and severally liable for nearly $200 million, and settlements with the remaining defendants for $84 million.

Mr. Grant is a frequent speaker on securities issues, particularly from the institutional investor perspective, at the Practising Law Institute, the Council of Institutional Investors and at other securities fora. In 2004, he taught at PricewaterhouseCoopers/University of Delaware Directors' College. Mr. Grant has also testified on behalf of institutional investors before the SEC and before the Third Circuit Panel on Appointment of Class Counsel. He has published numerous articles on securities litigation including: "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act," 1070 PLI/CORP. 547 (1998); Practising Law Institute, 1998; "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2000," 1199 PLI/CORP. 455 (2000); Practising Law Institute, 2000; "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2001," 1269 PLI/CORP. 689 (2001); "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2002," 1332 PLI/CORP. 695 (2002); "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2003," 1386 PLI/CORP. 553 (2003); "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004); "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is so Fraught With Uncertainty That They May be Void for Vagueness," 1505 PLI/CORP. 83 (2005); "*Unisuper v. News Corporation:* Affirmation that Shareholders, Not Directors, Are the Ultimate Holders of Corporate Power," 1557 PLI/CORP. 17 (2006); "Institutional Investors and Section 18 of The Exchange Act," The Review of Securities & Commodities Regulation, Vol. 33, No. 5, S&P, March 14, 2000; and "Class Certification and Section 18 of the Exchange Act," the Review of Securities and Commodities Regulation, Vol. 35, No. 21, S&P, December 11, 2002.

Prior to forming Grant & Eisenhofer in 1997, Mr. Grant was a litigation partner in the Wilmington office of the Philadelphia-based firm of Blank Rome Comisky & McCauley, and prior to that an associate at Skadden Arps Slate Meagher & Flom, LLP. Since 1994, he has been an Adjunct Professor of Law at the Widener University School of Law in Wilmington, leading a securities litigation seminar for third-year law students, and is also a Certified Teacher for the National Institute of Trial Advocacy (NITA). Mr. Grant graduated in 1982 *cum laude* from Brandeis University with a B.A. in Economics and received his J.D. from New York University School of Law in 1986. He served as Law Clerk to the Honorable Naomi Reice Buchwald in the United States District Court for the Southern District of New York.

**Megan D. McIntyre**

Ms. McIntyre, a G&E partner, practices in the areas of corporate, securities, and complex commercial litigation. Among other significant work, she has represented institutional investors -- both public and private -- in corporate cases in the Delaware Court of Chancery, as well as in securities class actions in federal courts throughout the country that have resulted in significant recoveries. She was a member of the trial team in *In re Safety-Kleen Corp. Bondholders Litigation*, which ended in settlements and judgments totaling approximately $280 million after six weeks of trial in the Spring of 2005. In 2006, she was a member of the litigation team in the landmark case of *UniSuper Ltd. v. News Corporation*, where the Delaware Court of Chancery ruled that shareholders may contractually limit directors' authority without amending the certificate of incorporation. Ms. McIntyre has successfully represented clients in obtaining access to corporate proxy statements for the purpose of presenting proposed shareholder resolutions, and has brought and defended actions seeking to enforce shareholders' rights to inspect corporate books and records pursuant to the statutory authority of Section 220 of the Delaware General Corporation Law. She was also the principal author of the firm's amicus curiae brief on behalf of the Council of Institutional Investors (CII), filed in the Delaware Supreme Court in the Walt Disney derivative litigation, urging the Court's adoption as Delaware law of the CII's standards or criteria for determining director "independence." At present, she has a lead role in class actions involving Refco and Able Laboratories, in shareholder derivative actions involving Tyson Foods and Cablevision, and in several cases on behalf of clients who have opted out of securities class actions to pursue individual actions.

Ms. McIntyre has appeared as a guest on CNBC's "On the Money," and has authored or co-authored a number of articles involving issues of Delaware corporate law and the federal securities laws, including: "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is So Fraught With Uncertainty That They May Be Void for Vagueness," 1505 PLI/Corp 83 (Sept. 2005); "Class Certification and Section 18 of the Exchange Act," The Review of Securities and Commodities Regulation, Vol. 35, No. 21, *Standard & Poor's* (Dec. 2002); "The Statutory Right of Inspection: An Important But Often Overlooked Tool," *Corporate Governance Advisor*, Vol. 9, No. 2 (May/June 2001); and "Causes of Action Available to Investors Under Delaware Law, Parts I and II," *Insights* (Oct. 1996; Nov. 1996).

Ms. McIntyre is a graduate of The Pennsylvania State University (1991) and The Dickinson School of Law (*magna cum laude* 1994), where she was an Articles Editor for the Dickinson Law Review. Ms. McIntyre is a member of the Delaware State Bar Association. Prior to joining Grant & Eisenhofer, Ms. McIntyre was associated with the Wilmington, Delaware offices of both Skadden Arps Slate Meagher & Flom, LLP and Blank Rome Comisky & McCauley, in their respective litigation departments.

**Geoffrey C. Jarvis**

Mr. Jarvis is a partner of Grant & Eisenhofer focusing on securities litigation for institutional investors. He had a major role in the Oxford Health Plans Securities Litigation and the DaimlerChrysler Securities Litigation, both of which were among the top ten securities settlements in U.S. history at the time they were resolved. Mr. Jarvis also has been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial. At the present time, he has primary responsibility for a number of cases in which Grant & Eisenhofer clients have opted-out of class actions, and also has a lead role in several pending securities class actions.

Mr. Jarvis graduated from Cornell University in 1980 with a B.A. in Government and Economics, and was elected to Phi Beta Kappa. He received his J.D., *cum laude*, from Harvard Law School in 1984. Until 1986, he served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry. He then became an associate in the Washington office of Rogers & Wells, principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well in counseling corporate clients in diverse industries on general legal and regulatory compliance matters. Mr. Jarvis previously was associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistle Blower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the United States Court of Appeals for the Third Circuit.

Mr. Jarvis recently authored "State Appraisal Statutes: An Underutilized Shareholder Remedy," *The Corporate Governance Advisor*, May/June 2005, Vol. 13, #3, as well as co-authoring "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, August 2004 (co-authored with Jay Eisenhofer and James R. Banko).

## John C. Kairis

As a G&E partner, Mr. Kairis represents sophisticated institutional investors in class action and individual "opt-out" securities litigation, and in derivative and corporate governance litigation in Delaware Chancery Court and other courts throughout the country. Mr. Kairis has been a leader of G&E teams that have achieved landmark results for clients, including some of the largest recoveries in securities class action history. He is currently representing British pension fund Hermes Focus Asset Management Europe Ltd. and other purchasers of Parmalat Finanziaria securities in a securities class action against Parmalat. He is also representing Teachers' Retirement System of Louisiana in a securities class action against Hollinger International, Inc. and its officers, directors and auditors and just concluded litigation and a settlement on behalf of Stichting Pensioenfonds ABP, the pension fund for government and education authorities in the Netherlands, in an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners.

Mr. Kairis has achieved significant corporate governance improvements for G&E's institutional investor clients, including an agreement by HealthSouth Corporation to replace its conflicted directors with independent directors approved by a committee including the institutional investor plaintiff. The groundwork for this case was established through Mr. Kairis' successful prosecution of a books and records case under Section 220 of the Delaware General Corporation Law, which resulted in HealthSouth disclosing documents they had previously refused to produce. Mr. Kairis has mediated and obtained favorable settlements for G&E clients in both major securities cases (including *Wyser-Pratte Management Co. v. Telxon Corp.*) and consumer class actions involving unfair competition and false marketing claims against both Johnson & Johnson and Bausch and Lomb.

Mr. Kairis is a graduate of the University of Notre Dame (1984), and the Ohio State University School of Law (1987), where he served as Articles Editor for the Law Review, and received the American Jurisprudence Award and the John E. Fallon Memorial Award for scholastic achievement. Recently, he authored the article "Challenging Misrepresentations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3 (June 14, 2006). He is a member of the Delaware and American Bar Associations and the

Delaware Trial Lawyers Association. Mr. Kairis has served on the boards of several nonprofit organizations, including the West-End Neighborhood House, Inc. and the Cornerstone West Development Corporation. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

## Michael J. Barry

Michael Barry is a partner in the Wilmington office of Grant & Eisenhofer. Mr. Barry's practice focuses on securities and corporate governance litigation, as well as advising clients on SEC matters. Mr. Barry was significantly involved in *In re Global Crossing Ltd. Securities Litigation*, which produced settlements totaling $448 million, and played a major role in landmark derivative litigation including cases challenging the terms of announced mergers between Caremark Rx, Inc. and CVS, between the Chicago Board of Trade and the Chicago Mercantile Exchange, and between the New York Stock Exchange and Archipelago Holdings. Each of these cases resulted in substantial reforms to the terms of the merger agreements to provide increased consideration and structural benefits to shareholders.

Mr. Barry also was instrumental in landmark corporate governance cases, including the *AFSCME v. AIG* case where the Court of Appeals for the Second Circuit recognized the right of shareholders to introduce proxy access proposals, and *Bebchuk v. CA, Inc.*, which opened the door for shareholders to introduce proposals restricting boards' ability to enact poison pills. Mr. Barry co-authored the Shareholder Activism Handbook (Aspen, 2004) with Jay Eisenhofer.

## James J. Sabella

Mr. Sabella is a partner of Grant & Eisenhofer, resident in G&E's New York City office. He has over 30 years of experience in complex civil litigation, including representing plaintiffs and defendants in class and derivative actions, involving trial and appellate work in state and federal courts. He has substantial experience in securities litigation and in litigation involving claims against accounting firms and underwriters. He also has handled antitrust litigation and cases involving the fiduciary obligations of trustees under state law.

Prior to joining G&E, Mr. Sabella practiced for 28 years at several large Manhattan law firms, most recently as a partner in Sidley Austin Brown & Wood LLP, where his practice focused largely on accountants' liability defense, including the defense of actions alleging securities law violations and professional malpractice, as well as grand jury investigations and investigations by the American Institute of Certified Public Accountants.

Mr. Sabella is a graduate of Columbia Law School (1976) where he was a member of the Board of Directors of the *Columbia Law Review*. He received a B.A. *summa cum laude* from Columbia College (1972) and a B.S. from the Columbia School of Engineering (1973), where he was valedictorian.

## Cynthia A. Calder

Cynthia Calder, a G&E partner, concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.* (vindicating the shareholders' right to vote), *Carmody v. Toll Brothers* (finding the dead-hand poison pill defensive measure was illegal under Delaware law), *Jackson National Life Insurance Co. v. Kennedy* (breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders), *Haft v. Dart Group Corp.* (resolving a contest for control of a significant public corporation) and *Paramount Communications Inc. v. QVC Network* (obtaining an injunction preventing the closing of a

merger to force the board of directors to appropriately consider a competing bid for the corporation).

Ms. Calder is a graduate of the University of Delaware (*cum laude* 1987) and the Villanova University School of Law (1991). She is a member of the Delaware Bar Association.

Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk to the Honorable Maurice A. Hartnett, III, then a Vice Chancellor of the Delaware Court of Chancery and now a retired Justice of the Delaware Supreme Court. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate in the Wilmington office of Blank Rome LLP.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including: "Options Backdating from the Shareholders' Perspective" *Wall Street Lawyer,* Vol. 11, No. 3, "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" *Securities Reform Act Litigation Reporter*, Vol. 16, No. 2 and "Pleading Scienter After Enron: Has the World Really Changed?" *Securities Regulation & Law*, Vol. 35, No. 45.

### Stephen G. Grygiel

Stephen Grygiel, a Partner with Grant & Eisenhofer, focuses his practice on complex securities and corporate governance litigation. Mr. Grygiel has litigated and tried a variety of shareholder dissolution actions, adversary proceedings in bankruptcy court, and other corporate and commercial matters. He has litigated, among others, issues concerning the validity of stock issued in private companies, minority shareholders' rights under statutes, by-laws and contracts, valuations and requisite consideration for founders' stock, minority discounts and control premiums for valuation purposes, the interplay of security interests and stock ownership rights, secured party seizures of stock, and a bankruptcy estate's ownership of funds fraudulently obtained from banks through a sophisticated check-kiting scheme. Mr. Grygiel has also litigated private cost recovery actions under CERCLA, representing plaintiffs in the *Laurel Park Coalition v. Goodyear* (Connecticut) and *Hanlin v. IMC* (Maine) cases. Having written, and contributed to, articles addressing private cost recovery actions and the intersection of CERCLA and common law rights of action, he has also lectured on those topics to industry professionals.

Mr. Grygiel graduated *magna cum laude* in 1979 from Hamilton College, where he was elected to Phi Beta Kappa and won other honors and academic awards. He graduated from Harvard Law School in 1986. Following law school, Mr. Grygiel clerked for the Chief Justice of Maine's Supreme Judicial Court.

### Keith M. Fleischman

Keith M. Fleischman is a Partner in G&E's New York office, focusing on high profile securities litigation cases. Named a "Super Lawyer" by *Super Lawyer Magazine* in 2006, Mr. Fleischman is a nationally recognized litigator and trial lawyer with over 20 years experience with the Justice Department, U.S. Attorney's Office and large plaintiffs firms.

Mr. Fleischman has served as lead or co-lead counsel and on the executive committee for many notable and successful litigations, including America Online, Ann Taylor, Motorola, Aetna and John Hancock, which collectively resulted in hundreds of millions of dollars in settlements to the respective classes. In 1995, Mr. Fleischman was plaintiffs' Chief Trial Counsel in *Robbins v. Koger Properties, Inc.,* in which a federal jury found Deloitte & Touche liable for securities violations and awarded the class $80+ million after a month-long trial. Mr. Fleischman also successfully argued before the Second Circuit the case of *Novak v. Kasaks*, the precedent–setting

decision regarding the pleading standard and disclosure of confidential informants under the PSLRA.

During his eight years as prosecutor, Mr. Fleischman tried numerous cases to verdict and served as Chief Trial Counsel in one of the largest savings and loan prosecutions successfully brought by the federal government, *United States v. Health*. Additionally, he served as a Trial Practice Instructor for the Attorney General's Advocacy Institute, U.S. Department of Justice, as a member of the New England Bank Fraud Task Force, Coordinating Committee, and as a member of the Connecticut Bank Fraud Working Group. Mr. Fleischman has received awards from the Director of the FBI and the Attorney General for his work while serving in the Justice Department.

Mr. Fleischman received his B.A. from the University of Vermont in 1980 and a J.D. from California Western School of Law in 1984. He lectures in the U.S. and abroad on the investigation, litigation and prevention of securities fraud.

**Charles T. Caliendo**

A Senior Counsel in Grant & Eisenhofer's New York office, Mr. Caliendo represents institutional investors in class action securities, opt-out and shareholder derivative litigation.

Before joining the firm, Mr. Caliendo served as an Assistant Attorney General in the Investment Protection Bureau of the New York State Attorney General's Office where he prosecuted cases and led investigations related to mutual fund "market timing" and "late trading." Prior to that, Mr. Caliendo practiced at a Manhattan-based law firm in the areas of class action securities, M&A, corporate governance and other commercial litigation.

Mr. Caliendo has written and spoken on issues relating to regulatory enforcement, corporate internal investigations and securities and shareholder litigation. In November 2004 and June 2006, Mr. Caliendo was a speaker at financial services industry seminars sponsored by The Association of the Bar of the City of New York for which he authored articles entitled: "The Investment Protection Bureau: An Overview of Financial Markets Regulation and Enforcement in New York" and "Thompson Memo Under A Microscope." In June 2005, Mr. Caliendo spoke before a delegation of Chinese mutual fund CEOs participating in the Penn-China Mutual Fund CEO Leadership Program, University of Pennsylvania Graduate School of Education. Some of Mr. Caliendo's other published works include: Co-Author: "Who Says The Business Judgment Rule Does Not Apply To Directors Of New York Banks?" 118 *Banking Law Journal* 493 (June 2001); and Co-Author: "Board of Directors' 'Revlon Duties' Come Into Focus", *New York Law Journal*, vol. 222, no. 86, col. 1 (Nov. 1, 1999).

Mr. Caliendo received his B.S. from Cornell University and J.D. from St. John's University School of Law where he was an editor of the *St. John's Law Review* and a Saint Thomas More Scholar.

**Reuben Guttman**

Reuben Guttman's practice involves complex litigation and class actions. He has represented clients in claims brought under the Federal False Claims Act, securities laws, the Price Anderson Act, Department of Energy (DOE) statutes and regulations, the WARN Act, RICO, and various employment discrimination, labor and environmental statutes. He has also litigated and/or tried claims involving fraud, breach of fiduciary duty, antitrust, business interference, and other common law torts.

Mr. Guttman has been counsel in some of the largest recoveries under the Federal False Claims Act, including *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (ED Tex. 1999),

where over $300 million were recovered from the oil industry. He served as lead counsel in a series of cases that resulted in the recovery of more than $30 million under the Federal Fair Labor Standards Act. Litigation brought by Mr. Guttman on behalf of nuclear weapons workers at "Manhattan Project" nuclear weapons sites resulted in congressional oversight and changes in procurement practices affecting the nation's nuclear weapons complex. In addition, he served as lead counsel in litigation brought on behalf of prison workers in the District of Columbia, which resulted in injunctive relief protecting workers against exposure to blood-borne pathogens. Mr. Guttman served as lead counsel in a mediation before the United States Equal Employment Opportunity Commission, resulting in work place standards and back pay for minority employees at a large Texas oil refinery.

Mr. Guttman is the author and editor of dozens of articles and scholarly works. He has appeared on *ABC Nightly News* and CNN, and has been quoted in major publications, including *The Wall Street Journal, The Washington Post, The Los Angeles Times, The Atlanta Journal-Constitution, USA Today, Houston Chronicle, Dallas Morning News*, and national wire services including the Associated Press and Reuters. In addition to his writings, Mr. Guttman has testified before committees of the United States House of Representatives and the United States Senate on the Asbestos Hazard Emergency Response Act (AHERA). In 1992, he advised President-elect Clinton's transition team on labor policy and worker health and safety regulation.

Mr. Guttman earned his law degree at Emory University Law School in 1985, and his bachelor's degree from the University of Rochester. He is a faculty member at the Emory University School of Law Edison-Kessler Trial Advocacy Program and is a founding member of the American Association for Justice (AAJ) Qui Tam Litigation Committee. He has been a guest lecturer at a number of universities including Jao Tong University in Shanghai, Peking University in Beijing and Renmin University in Shanghai. In 2006 he was invited by the Dutch Embassy in China to share his expertise with experts in China about changes to the nation's labor laws.


**Ann Lugbill**

Ann Lugbill has represented dozens of plaintiffs in False Claims Act qui tam, whistleblower, class action, corporate securities fraud, and employment-related cases for over 20 years. At Grant & Eisenhofer, Ms. Lugbill works on False Claims Act qui tam litigation involving whistleblowers who expose corporate fraud and abuse.

Ms. Lugbill co-authored *False Claims Act: Whistleblower Litigation* (Michie 1st Ed. 1994, Lexis, 2d Ed. 1999) and *Representing the Terminated Employee in Ohio* (Anderson 2d Ed. 1997, Supp. 2004), as well as articles on employment law, legal ethics, and attorneys' fees. Ms. Lugbill filed Jack Gravitt's pioneering False Claims Act qui tam case in 1984 and was featured in a Mike Wallace "60 Minutes" segment on her qui tam case involving false certifications as to the Buy America Act. She has been counsel in dozens of qui tam cases, co-counseling cases throughout the United States, including in Texas, Virginia, Massachusetts, Pennsylvania, New York, Ohio, Nebraska, Illinois, Kentucky, and the District of Columbia

Ms. Lugbill earned her law degree from the University of Virginia Law School in 1980, and her Bachelor's degree from Kalamazoo College in Kalamazoo, Michigan. After law school, she worked for the United States Government as an attorney and then entered private practice in Cincinnati, Ohio.

An active leader in the Ohio legal community, Ms. Lugbill was a founding member and officer of the Ohio Employment Lawyers Association and Chair of the Cincinnati Bar Association Grievance Committee from 2003-2005. She continues to serve as co-chair of the

Josh Morrow Workplace Fairness Fund, a nonprofit fund that provides costs for employment plaintiffs and whistleblowers in meritorious cases.

**Mary S. Thomas**

Prior to joining Grant & Eisenhofer in 2006, Mary Thomas gained a 12-year track record in business litigation with two of Los Angeles' leading law firms. Her practice included trade secret and intellectual property matters, contract actions, employment defense, consumer class action defense, insurance disputes and environmental matters.

Ms. Thomas co-authored "California Wage and Hour Laws" (published by the National Legal Center for the Public Interest, January 2005). She was also one of several authors of the 10th and 11th editions of the *California Environmental Law Handbook*. She also served as a volunteer arbitrator for the L.A. County Bar Association and as a volunteer mediator for the L.A. Superior Court.

A *magna cum laude* graduate of Harvard Law School, Ms. Thomas earned her Bachelors Degree from the University of Delaware. After more than a decade practicing on the West Coast, she is pleased to be back in her home community.

**Lesley Weaver**

Lesley Weaver is Senior Counsel in G&E's Wilmington office, focusing on the litigation and management of complex class actions in federal and state courts. Her practice focuses on federal securities actions against public companies on behalf of pension funds and institutional shareholders. Ms. Weaver has extensive experience with motion practice, oral argument, developing and implementing discovery strategy, as well as deposition, expert discovery and case resolution.

Ms. Weaver has been involved in many notable decisions and settlements, including In re Cardinal Health, Inc. Securities Litigation, Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Systems, In re Boeing Securities Litigation, In re NorthPoint Securities Litigation, In re Commtouch Securities Litigation, In re Vicuron Securities Litigation, and In re Cavanaugh.

Ms. Weaver earned her law degree in 1997 from the University of Virginia School of Law, after graduating *magna cum laude* from Harvard University. Ms. Weaver is fluent in German and Danish, and speaks some Swedish and French.

**Diane Zilka**

A Senior Counsel with G&E, Ms. Zilka is integral to G&E's successful efforts to prosecute securities fraud and corporate governance cases on behalf of public and private funds in class and individual actions. She played a key role in achieving significant recoveries for funds managed by private institutional investors *in Styling Technology Corporation* and on behalf of the State of Wisconsin Investment Board and the other class members in *Just For Feet Securities Litigation*. Ms. Zilka was part of the trial team in *Safety Kleen Bondholder Litigation* that recovered more than $275 million in judgments and settlements on behalf of investors. She represents United Kingdom private pension funds and others as lead plaintiffs in *In re Parmalat Securities Litigation* and German, Swiss, and Norwegian institutional investors in securities fraud actions against Vivendi S.A. In the corporate governance arena, Ms. Zilka has successfully defended the State of Connecticut pension funds before the SEC in a challenge by the Disney Corporation to the funds' corporate governance proxy proposal. She is currently part of the team pursuing breach of fiduciary duty claims against officers and directors of American International

Group and Countrywide Financial Corporation. Ms. Zilka co-authored, with Stuart Grant, "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004) and "The Current Role Of Foreign Investors In Federal Securities Class Actions," 1620 PLI/Corp 11 (2007).

Ms. Zilka has concentrated her career in securities, corporate and complex commercial litigation. Before joining G&E, she was a partner in a New York City law firm and a member of its investor protection practice group. In addition to securities fraud and corporate governance matters, Ms. Zilka has extensive experience litigating a wide range of other complex matters, including mergers and acquisitions, proxy disclosures and contests, limited partnership issues, ERISA and bankruptcy matters. She has also represented investors in proceedings before the New York Stock Exchange and the American Arbitration Association.

Ms. Zilka is a graduate of the State University of New York at Binghamton (1982) and Fordham University School of Law (1985). She is a member of the American, Delaware, Pennsylvania and New York State Bar Associations and a member of the Association of the Bar of the City of New York. She volunteers with Literacy Volunteers Serving Adults in Delaware and has enjoyed being a "Big Sister" with Big Brothers Big Sisters Association of Philadelphia.


## Stephen K. Benjamin

Stephen K. Benjamin brings to Grant & Eisenhofer an extensive career in law, business, politics, government and civic life. In January 1999, South Carolina Governor Jim Hodges appointed Mr. Benjamin to the Governor's Cabinet. The South Carolina Senate unanimously confirmed his appointment as Director of the South Carolina Department of Probation, Parole and Pardon Services, where he served as Chief Executive of the 950 employee, state law enforcement agency.

Prior to accepting his Cabinet appointment, Mr. Benjamin served as Regional Manager of Public Affairs for International Paper Company, where he managed the company's legislative and public affairs activities in South Carolina, North Carolina, Georgia, and Virginia. Prior to joining International Paper, he was Manager of Corporate Affairs at Carolina Power & Light Company, and served an Associate in the Administrative and Regulatory practice of the prominent McNair Law Firm in Columbia, South Carolina. He has also served as an assistant prosecutor in South Carolina's 4th Judicial Circuit. The South Carolina Bar Association named him a co-recipient of the 2001 Young Lawyer of the Year and he is a recipient of the 2000 Compleat Lawyer Award given by the University of South Carolina School of Law. In 1999 the National Bar Association named him the National Young Lawyer of the Year and the University of South Carolina recognized him as Young Alumni of the Year. He is the recipient of the Lincoln C. Jenkins, Jr. Award given by the Columbia (SC) Urban League for accomplishments as a young professional and was featured as one of Ebony Magazine's 30 Leaders of the Future.

Steve Benjamin's community leadership experiences are extensive. Currently, he sits on the University of South Carolina School of Law Partnership Board, the Boards of Directors of the USC Development Foundation, The Columbia Urban League, The Greater Columbia Chamber of Commerce and The South Carolina Chamber of Commerce. He serves as the Chair-Elect of the Midlands Education and Business Alliance and as a Statewide Co-Chair of Choose Children First.

Mr. Benjamin received his Bachelors Degree in Political Science from the University of South Carolina in 1991, and his J.D. Degree from the University of South Carolina School of Law in 1994.

**Jeff A. Almeida**

At Grant & Eisenhofer, Jeff Almeida has represented shareholders in several securities fraud actions against Fortune 500 companies, as well as being involved in derivative litigation and litigation involving illegal or abusive tax shelters. Prior to joining G&E in August 2004, Mr. Almeida was associated for seven years as an attorney with a major Philadelphia law firm, where he practiced in the complex commercial litigation department focusing on class action litigation, commercial contracts, and insurance defense.

Mr. Almeida is a graduate of Trinity College in Hartford, Connecticut (*Phi Beta Kappa*, 1994) and William and Mary Law School in Williamsburg, Virginia (1997). Mr. Almeida is a member of the Pennsylvania, New Jersey and American Bar Associations.

**Peter B. Andrews**

Prior to joining Grant & Eisenhofer, Peter B. Andrews was a law clerk for the Honorable Alan M. Black of the Court of Common Pleas, Lehigh County, Pennsylvania. He then joined a large Philadelphia law firm where his practice primarily consisted of representing securities broker-dealers, registered representatives, and investment advisors in federal and state litigation, as well as in arbitrations before the NASD, NYSE, and American Arbitration Association. Mr. Andrews also has experience related to employment disputes and restrictive covenants, ERISA, and the representation of insurance brokers.

Mr. Andrews has authored several articles for publication, including: "New Disclosure Requirements for Brokered CD's" (co-author), *The Source (Financial Planning Association Newsletter),* December 2002.

Peter Andrews is a 1998 graduate of The Dickinson School of Law, and a 1992 graduate of Colby College, where he majored in economics. Mr. Andrews is a member of the Philadelphia and Pennsylvania Bar Associations.

**James R. Banko**

James Banko practices in the areas of corporate, securities, and complex commercial litigation and has concentrated his practice primarily in the Commercial Part of the New York Supreme Court in cases involving shareholder rights and securities fraud. Mr. Banko represents sophisticated institutional investors in a high-profile securities fraud class action – *In re Tyco International, Ltd. Securities Litigation* – as well as in an "opt out" action involving, *inter alia*, allegations against Bristol-Myers and several officers and directors.

Mr. Banko is one of the authors of "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance–Based Theory of Loss Causation," by Jay W. Eisenhofer, Geoffrey C. Jarvis, and James R. Banko, published in *The Business Lawyer*; Vol. 59.

Mr. Banko graduated from Reed College (1981), the New York University Graduate School of Arts and Sciences (1987) and the University of Pennsylvania School of Law (1990), where he was a member of the Journal of International Business Law.

**Ananda N. Chaudhuri**

At G&E, Ananda Chaudhuri focuses on securities litigation and deceptive advertising. He received his law degree in 2005 from University of Pennsylvania, where he was a member of the Journal of International Law and Policy and a member of the Film, Music & Media Society.

Mr. Chaudhuri received his BA in Journalism and Anthropology from New York University. Mr. Chaudhuri's experience includes positions as a Summer Associate at Adkins,

Kelston, Zavez, P.C. in Boston, and research and writing positions at Pennsylvania Employment Law Publishing (Philadelphia), *Self Magazine*, and *Working Woman* magazine in New York City.

**Lydia Ferrarese**

Lydia Ferrarese is involved in the G&E legal team defending equity holders in the Parmalat class action litigation against financial institutions and against directors and statutory auditors for international fraud in violation of securities laws and regulations.

Prior to joining Grant & Eisenhofer, Ms. Ferrarese (who received her initial law degree in Italy) served as a visiting attorney with several prominent law firms in New York, Boston and Los Angeles. She was also an Associate at firms in Milano and Bologna, Italy. Ms. Ferrarese drafted numerous agreements and opinions on corporate issues for major Italian and multi-national corporations, focusing on Mergers and Acquisitions. In 1996, Ms. Ferrarese served as an Assistant Professor of Civil Law at the Ariosto School in Bologna, Italy.

Ms. Ferrarese received her LL.M. in Corporate, Banking and Finance Law at Fordham University School of Law in New York City, and her J.D. equivalent from the University of Bologna, Italy in 1993. She was a contributing writer and editor of the *"Guide for the Italian Importer to the United States"* by Michael Doland, 2000, and editor of the article, "Dissolution of a corporation and minority shareholders' rights" *Le Societa', Ipsoa,* May 2001.

**Christine Mackintosh**

Christine Mackintosh adds depth and experience to G&E's complex litigation and trial capabilities. As a member of the Litigation Practice Group of a large Philadelphia law firm, she gained extensive experience in commercial litigation, insurance recovery, securities litigation and bankruptcy litigation. She acted as lead counsel in several bankruptcy and commercial litigation cases, and served as lead trial counsel in a case brought before the US Bankruptcy Court for the Eastern District of PA.

A graduate of St. Joseph's University in Philadelphia (*magna cum laude*), Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School. She is the co-author of two articles published by the Practicing Law Institute's *Corporate Law & Practice Course Handbook Series.* "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

Ms. Mackintosh is a member of the Philadelphia and Pennsylvania Bar Associations.

**James P. McEvilly, III**

Jim McEvilly is a seasoned litigator who practices in the areas of securities, corporate governance and complex commercial litigation. At Grant & Eisenhofer, he has successfully represented institutional clients in federal and state courts throughout the United States. Mr. McEvilly played a primary role in recovering in excess of $48 million in a securities class action on behalf of a class of bond holders in Hayes Lemmerz International, Inc. in the U. S. District Court for the Eastern District of Michigan, and is currently playing a lead role in a securities opt-out case on behalf of institutional investors in DVI, Inc. in the U.S. District Court for the Eastern District of Pennsylvania.

Mr. McEvilly is also involved in representing lead plaintiffs in G&E's large complex securities class actions, including *In re Marsh & McClennan Companies, Inc.* pending in the U.S. District Court for the Southern District of New York, and *In re Tyco*, pending in the District of New Hampshire. In addition to his involvement in securities class actions, Mr. McEvilly also represented seat holders in the New York Stock Exchange Merger Litigation in the Supreme Court of the State of New York and institutional investors in the Caremark/CVS Merger Litigation in the Court of Chancery of the State of Delaware.

Prior to joining G&E, Mr. McEvilly was a litigator at a prominent litigation boutique in Philadelphia, where he represented both plaintiffs and defendants in a wide range of complex litigation matters and controversies of significant public interest. Prior to that, Mr. McEvilly was an associate at a large defense firm in Philadelphia.

Mr. McEvilly graduated from the University of Pennsylvania in 1991 with a B.A. degree in Political Science. He received his J.D. degree from the University of Pennsylvania in 1994. Mr. McEvilly also served in the United States Army for two years in an armored division in Western Europe.

## Domenico "Nico" Minerva

Mr. Minerva is an associate in Grant & Eisenhofer's New York office, focusing on a wide range of securities litigation matters. His efforts contributed to the firm's successful settlements against Tyco and Royal Dutch Shell.

Mr. Minerva earned his law degree from Tulane University Law School in 2006, and his B.S. degree in Business Administration from the University of Florida in Gainesville, Florida. Prior to joining G&E, he served a Judicial Externship with the U.S. District Court – Eastern District of Louisiana, worked as a summer law clerk and paralegal for a west coast law firm, and developed mediation skills with an alternative dispute resolution service in San Francisco.

Prior to attending law school, Mr. Minerva spent a year as a casting associate and production assistant for Fox Entertainment Group's and CBS Broadcasting's popular shows, "American Idol," "Survivor" and the "Amazing Race," and worked for several years as a financial advisor and retirement planning specialist for Morgan Stanley.

## Catherine Pratsinakis

Catherine Pratsinakis has been involved in numerous complex litigations involving multi-national Fortune 500 companies, in matters relating to securities fraud, shareholder disputes, breach of contract, merger disputes, accounting malpractice, and antitrust violations. She has represented several major airlines in bankruptcy litigation and assisted in the bankruptcy court-appointed examination of a major nursing home health system. Mrs. Pratsinakis has been involved in a number of pro bono activities, including Volunteer Income Tax Assistance (VITA); Bankruptcy Pro Bono Project; and Philadelphia's Volunteer for the Indigent Program (VIP). She has represented the interests of less fortunate individuals in matters involving bankruptcy, inheritance tax, income tax, real estate, landlord-tenant, as well as other legal matters.

Mrs. Pratsinakis obtained her J.D., with honors, from the Rutgers University School of Law - Camden (2001) where she made Law Review and served on the editorial staff of the *Rutgers Law Journal*. She obtained her MBA, with honors, from Rutgers University School of Business (2001) where she concentrated on finance and global management. She earned her B.A. in Psychology from the University of Maryland- College Park (1993).

Mrs. Pratsinakis served as editor of the *Philadelphia Bar Reporter* in 2003. Her published articles include: "American Sports as a Target for Terrorism: the Duty of Care After 9/11" "Multinational Jurisdictional and Procedural Issues Created By the World Wide Web: Litigation in a World without Boundaries" *Insurance for Techno-Torts, Intellectual Property, and Unfair Business Practices Course Book*, DRI.

## Ralph N. Sianni

For over ten years, Mr. Sianni has focused on complex commercial litigation. He joined G&E from another leading national securities litigation firm, where he handled class action securities litigation cases, and cases involving mergers and acquisitions, general corporate law and breach of fiduciary duties. His trial experience includes the preparation of motions pleadings and briefs for cases before the U.S. Third Circuit Court and U.S. Supreme Court.

Mr. Sianni recently co-authored the article, "Is the Fix In? - Are Hedge Funds Secretly Disenfranchising Shareholders?, *Bloomberg Law Reports - Corporate Governance*, January 2005; In the *Boston University Public Interest Law Journal,* he published a Case Comment on *Claremont School District v Governor*, concerning the right of low-income school districts to acquire facilities under the NH State Constitution.

Prior to entering private practice, Mr. Sianni served as a Law Clerk to the Hon. Stephen J. McEwen, Jr., President Judge of Pennsylvania Superior Court. As a Legislative Intern for the American Civil Liberties Union of Pennsylvania, he researched and wrote memoranda on First Amendment issues for the PA legislature.

Mr. Sianni earned his law degree from the Boston University School of Law and his Masters Degree in History from Yale University. He graduated *cum laude* with distinction in his major (history) from the University of Pennsylvania.

## David A. Straite

David Straite is a 1996 magna cum laude graduate of the Villanova University School of Law, where he was a member of the Order of the Coif, the Federalist Society and the St. Thomas More Society. In recognition of his efforts as managing editor of the Villanova Law Review, he received the Arthur Pulling Award. Mr. Straite is a 1993 graduate of the Murphy Institute of Political Economy at Tulane University in New Orleans, where he majored in both Political Economy and Economics.

Prior to joining G&E, Mr. Straite was a litigation associate in the Philadelphia office of Blank Rome, primarily defending claims in Pennsylvania and New Jersey state and federal courts against air carriers and avionics components manufacturers. Mr. Straite was also an associate in the Antitrust department in Skadden Arp's New York office, where he represented corporations and investors during the antitrust review of mergers and acquisitions under section 7 of the Clayton Act, HSR premerger notification under section 7A, criminal antitrust grand jury investigations, civil regulatory investigations by the DOJ and FTC, class action antitrust litigation, complex document production and e-discovery, and CFIUS.

Mr. Straite was a contributing author to Dabbah and Lasok's *Merger Control Worldwide* (2005) and contributed to four annual supplements (2002-2005) of the seminal premerger treatise, *Acquisitions Under the Hart-Scott-Rodino Antitrust Improvements Act* by Axinn, Fogg, Stoll & Prager. He has lectured frequently on topics related to the attorney-client privilege and work product doctrine.

**Hung G. Ta**

Hung Ta is an Associate in Grant & Eisenhofer's New York Office, where he focuses on securities litigation and shareholder derivative litigation on behalf of our institutional investor clients.

Prior to joining G&E, Mr. Ta spent more than six years as a litigation associate at a leading New York law firm, where he represented a considerable number of officers and other clients of the firm in securities litigation, white-collar defense work and regulatory investigations. Mr. Ta also represented other clients of the firm in general commercial litigation matters involving bankruptcy, reinsurance, professional malpractice, mutual fund litigation and ERISA litigation.

Before coming to the United States, Mr. Ta completed his education in Australia, earning a degree in Finance from the University of New South Wales School of Commerce and his Law degree from the University of New South Wales School of Law. After law school, Mr. Ta clerked with the Honorable Justice Gaudron of the High Court of Australia, Australia's ultimate appellate court.

**Marc D. Weinberg**

Prior to joining Grant & Eisenhofer in 2006, Marc Weinberg gained a 14-year track record with two of the nation's leading securities litigation firms. He focuses on institutional services at Grant & Eisenhofer.

Mr. Weinberg earned his law degree at Widener University in 1992, after graduating from Pennsylvania State University. He is a member of the Philadelphia and Pennsylvania Bar Associations, and the Moot Court Honor Society.

**Selected Institutional Client Representations**

  G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country. Some of our cases include:

**(A)**  **In Securities Fraud Litigation:**

  **(1)**  **Cellstar**

    In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in Gluck v. CellStar Corp., 976 F.Supp. 542 (N.D.Tex. 1997). The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, In re Cendant Corp. Litig., 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing CellStar.) After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well. With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation. Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

  **(2)**  **DaimlerChrysler**

    Florida State Board of Administration ("FSBA") was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals." On February 5, 2004, the court granted final approval of a $300 million cash settlement in that case, among the largest securities class action settlements since the enactment of the PSLRA. In re DaimlerChrysler Securities Litigation, D. Del., C.A. No. 00-0993.

**(3)    Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into In re Oxford Health Plans, Inc., Securities Litig., S.D.N.Y., MDL Docket No. 1222 (CLB).    The court ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel.    G&E and its co-leads filed the Consolidated Amended Complaint. Memorandum opinions and orders were entered denying defendants' motions to dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director defendants)).    The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

**(4)    Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL") as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results.    Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General.    In re Dollar General Securities Litigation, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

**(5)    Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama.    That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results.    Having been appointed co-lead plaintiff, SWIB and (G&E) as its counsel took primary responsibility for the case. (SWIB v. Ruttenberg, et al., N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)).    SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

(6)    **Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc. The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations. G&E also filed non-class actions in Illinois state court, asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL"). After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida. At the point where there were competing motions for summary judgment pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action. Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al., N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al., Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

(7)    **Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System ("LASERS") and Teachers' Retirement System of Louisiana ("TRSL") were appointed as Lead Plaintiff in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, pending in the U.S. District Court for the Central District of California. G&E was approved as Plaintiffs' Lead Counsel. Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, inter alia, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price. G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders. At the time of the settlement, this amount represented 33% of the value of the Company's shares. In re Total Renal Care Securities Litigation, C.D. Cal., Master File No. CV-99-01745 CBM.

(8) **Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds. In re Safety-Kleen Corp. Bondholders Litig., D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001. In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million. The trial then proceeded against the director and officer defendants. After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of over $190 million.

(9) **Styling Technology Corporation**

G&E represented funds managed by Franklin Advisors, Inc., Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and OppenheimerFunds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California. The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds. Styling Technology filed for bankruptcy protection under Chapter 11 in August 1999. In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998. Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage. Franklin High Income Trust, et al. v. Richard R. Ross, et al., Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

(10) **Tyco**

G&E is co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class against Tyco International Ltd. and PricewaterhouseCoopers LLP. The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski and other former executives and directors of Tyco, and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934. Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation. PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

**(11)**    **Global Crossing**

Ohio Public Employees' Retirement System ("Ohio PERS") and the Ohio Teachers' Retirement System ("STRS") were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd.    In re Global Crossing, Ltd. Securities & "ERISA" Litig., MDL Docket No. 1472.    In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million.    In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman).    In October 2005, the Court approved a settlement with Arthur Anderson LLP and all Anderson-related defendants for $25 million.    In October 2006, the Court approved a $99 million settlement with various financial institutions.    In total, G&E has recovered $448 million for investors in Global Crossing.

**(12)**    **Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm.    Following mediation, G&E negotiated a settlement of all claims.    Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al., N.D. Ohio, Case No. 5:02CV1105.

**(13)**    **Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million.    Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al., E.D. Mich., C.A. No. 02-71778.

**(14)**    **Enron/Worldcom**

In 2001, G&E, on behalf of various Ohio public pension funds, filed opt-out actions which remain pending.    Public Employees' Retirement System of Ohio v. Ebbers, et al., S.D.N.Y. No. 03-Civ-0338; Public Employees' Retirement System of Ohio v. Fustow, et al., S.D. Tex. No. H-02-4788.

**(15)**    **Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales.    Defendants' motions to dismiss were denied.    Franklin High Income Trust, et al. v. APP Global Ltd., et al., N.Y. Sup. Ct., Trial Div., Index No. 02-602567.    The matter was resolved through a confidential settlement several years ago.

**(16)    Babcock Borsig**

G&E filed suit against German company Babcock Borsig, AG alleging that Babcock's CEO, in concert with officers of Babcock's largest shareholder, German conglomerate TUI, devised a plan to overstate Babcock's income through improper use of an accounting device relating to a Babcock subsidiary. The suit was filed on behalf of Wyser-Pratte Management Co., Inc.. Defendants' motions to dismiss were granted and the case had been terminated. Wyser-Pratte Management Co., Inc. v. Babcock Borsig, A.G., et al., N.Y.Sup. Ct., Trial Div., Index No. 603364/02.

**(17)    Alstom**

In January 2004, Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France. The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary. Motions to dismiss were denied in part and granted in part and an amended complaint has been filed. In re Alstom SA Sec. Litig., S.D.N.Y. 03-cv-6595.

**(18)    Parmalat**

G&E is co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC has described as "one of the largest and most brazen corporate financial frauds in history." The court has recently denied the motions to dismiss filed by both the company and their auditors. In re Parmalat Securities Litig., S.D.N.Y. 04-MDL-1653.

**(19)    Marsh & McLennan**

G&E is co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions. In re Marsh & McLennan Companies, Inc. Sec. Litig., S.D.N.Y. 04-cv-8144.

**(20)    Hollinger International**

G&E is co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets. G&E has entered into a tentative settlement with Hollinger that is awaiting approval from the Court. Hollinger International Securities Litigation, N.D. Ill. 04-C-0834.

**(21)  <u>Delphi</u>**

Delphi is an automotive company that was spun off of General Motors. The company failed as a stand-alone entity. However, the company concealed that it had failed. G&E's client is one of the largest pension funds in the world and is a lead plaintiff and G&E serves as a co-lead counsel in the case. <u>In re Delphi Corporation Securities Derivative & ERISA Litigation</u>, E.D. Mich., MDL No. 1725.

**(22)  <u>Refco</u>**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO. G&E serves as a co-lead counsel and our client is a co-lead plaintiff. <u>In re Refco, Inc. Securities Litigation</u>, S.D.N.Y., No. 05 Civ. 8626.

**(B)    In Derivative and Other Corporate Litigation:**

**(1)    Digex**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation. G&E filed a class and derivative action in the Delaware Court of Chancery, alleging that Digex, Inc.'s directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia. Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. TCW Technology Limited Partnership ("TCW") was appointed lead plaintiff, and G&E was appointed lead counsel, in connection with their motion to preliminarily enjoin the merger. Following G&E's argument on the motion on November 29, 2000, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. In re Digex, Inc. Shareholders Litigation, Del. Ch., C.A. No. 18336, 2000 WL 1847679 (Dec. 13, 2000).

**(2)    Willamette**

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and Franklin Mutual Advisors, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor, Weyerhaeuser Company. G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E. Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser. Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al., No. 0201-0085 (Ore.Cir.Ct.).

**(3)    Medco Research**

In January 2000, G&E filed a shareholder derivative action on State of Wisconsin Investment Board's ("SWIB") behalf against the directors of Medco Research, Inc. in Delaware Chancery Court. The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc. G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis. SWIB v Bartlett, et al., Del. Ch., C.A. No. 17727, 2000 WL 193115 (Feb. 9, 2000).

**(4)    Occidental Petroleum**

G&E represented Teachers' Retirement System of Louisiana ("TRSL") and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives.    Filed in a California state court, the case settled when the company agreed to adopt CalPERS's model principles of corporate governance and undertook to reconstitute its key committees so as to meet the tests of independence under those principles.    TRSL v. Irani et al., Cal. Super., L.A.Co. [Calif.], C.A. No. BC1850009.

**(5)    Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana ("TRSL"), G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998.    G&E obtained a preliminary injunction against the deal and its terms were ultimately altered resulting in a $15-$20 million gain for shareholders.    Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures.    In re Staples, Inc. Shareholders Litigation, Del.Ch., C.A. No. 18784, 2001 WL 640377 (June 5, 2001).

**(6)    SFX/Clear Channel Merger**

G&E filed a class action on behalf of Franklin Advisers, Inc. and other stockholders of SFX, challenging the merger between SFX and Clear Channel (the "Merger").    While the SFX charter required that in any acquisition of SFX all classes of common stockholders be treated equally, the Merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders.    The Merger was structured so that stockholders who voted for the Merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the Merger.    G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the Merger.    This was more than half the damages alleged in the Complaint.    Franklin Advisers, Inc., et al. v. Sillerman, et al., Del. Ch., C.A. No. 17878, amended complaint filed April 24, 2000.

(7)    **Lone Star Steakhouse & Saloon**

G&E filed a derivative lawsuit on behalf of CalPERS against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors. The suit alleges that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs. Before filing the derivative suit, G&E had assisted in CalPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law. The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs. In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a re-pricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy. Lone Star further agreed that it had adopted previously publicly announced corporate governance reforms, and that the commencement of the lawsuit was one of the significant factors considered in the adoption of the reforms. California Public Employees' Retirement System v. Coulter, et al., Del. Ch., C.A. No. 19191, complaint filed October 16, 2001.

(8)    **Siebel**

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. In Siebel Systems, G&E effected a sea change in the compensation policies of Siebel Systems, Inc., a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a potential value of $54 million. Since the company's founding in 1996, Siebel Systems, Inc. paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan. In addition, the company paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies. G&E, on behalf of Teachers' Retirement System of Louisiana ("TRSL"), commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed. Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms. The company agreed to, inter alia, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors. The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation

experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues as well. <u>Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al.</u>, C. A. No. 425796 (Cal. Super. 2003) ("Siebel Systems").

**(9)      HealthSouth Corporation**

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana ("TRSL") against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, <u>inter alia</u>, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months. Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company, breached their fiduciary duties and engaged in other improper acts agreed to resign and be replaced by directors selected by a committee comprised in part by TRSL and representatives of large institutional investors of HealthSouth. <u>Teachers' Retirement System of Louisiana v. Scrushy</u>, No. 20529 (Del. Ch. March 2, 2004) Strine, V.C.

**(10)     NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seatholders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC. The complaint alleged that the terms of the proposed merger were unfair to the NYSE seatholders, and that by approving the proposed merger, the NYSE board of directors violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts. Defendants moved to dismiss, arguing that the claims were derivative claims and also that the action was barred by the business judgment rule. The court denied the motion to dismiss. After expedited discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor. On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor. <u>In re New York Stock Exchange/Archipelago Merger Litig.</u>, No. 601646/05 (Sup. Ct. N.Y. Co.)

**(11)     Caremark / CVS**

G&E represented two institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor. Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the

public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal.

## <u>CERTIFICATE OF SERVICE</u>

I, Jay W. Eisenhofer, hereby certify that on August 25, 2008, the foregoing

Declaration of Michael J. Barry in Support of Berks County Employees' Retirement

Fund's Motion for Appointment as Lead Plaintiff and For Approval of Its Selection of

Counsel was electronically filed and served via the Court's CM/ECF Filing System to all

known counsel of record.

Dated:  August 25, 2008                     <u>s/ Jay W. Eisenhofer</u>
                                            Jay W. Eisenhofer